# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| KIMBERLY ANGST, | ) | 1:07cv0680 DLB |
| | ) | |
| | ) | |
| Plaintiff, | ) ) | ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) ) | |

## BACKGROUND

Plaintiff Kimberly Angst ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

## FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed her application for supplemental security income on February 17, 2004, alleging disability since May 1, 1998, due to depression, anxiety, constant neck, shoulder, back,

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On May 29, 2007, the action was reassigned to the Honorable Dennis L. Beck for all purposes.

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

hand and hip pain, and hepatitis C.  AR 69-81.  After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 41-45, 47-52, 57.  On March 26, 2006, ALJ James P. Berry held a hearing.  AR 458-489.  He denied benefits on May 18, 2006.  AR 11-20.  On March 14, 2007, the Appeals Council denied review.  AR 6-9.

<u>Hearing Testimony</u>

ALJ Berry held a hearing via video conference on March 21, 2006.  AR 458.  Plaintiff appeared with her representative, Diana Wade.  Vocational expert ("VE") Kenneth Ferra also appeared and testified.  AR 458.

Plaintiff testified that she was 53 years old at the time of the hearing.  Her normal weight was 122, but she weighed 112 at the time of the hearing.  She was 5'7" tall.  AR 462.  She completed high school and received training through the Department of Rehabilitation for addiction counseling.  AR 463.  She has a driver's license but tries not to drive because her car is not insured.  AR 463.  She was currently staying on the floor of a friend's room.  AR 473.  In exchange for a place to stay, Plaintiff takes out the trash does some cleaning.  AR 477.  She is a recovering alcoholic and has been sober since 1990.  AR 475.

Plaintiff last worked in 1998 or 1999 in a cigarette store.  She stopped working because she was terminated.  AR 464.  Prior to that, she was a counselor in a residential treatment center for women with children.  She performed that position for about 10 months, but was eventually terminated.  She also worked as a care giver for her grandmother, a property manager and a service driver.  AR 465-467.

Plaintiff explained that her fibromyalgia has worsened and that it keeps her from working.  Her post-traumatic stress disorder ("PTSD") causes problems sleeping and recurring nightmares.  She has trust issues and paranoia that make her not want to leave the house.  She is also overwhelmed with everything.  Her hepatitis C causes bone pain and fibromyalgia.  She takes Tylenol for the pain but could be treated by a doctor if she had insurance.  AR 469.  Her fatigue also keeps her from performing daily activities.  AR 470.  She has been diagnosed with chronic obstructive pulmonary disease ("COPD").

She is currently receiving treatment for her PTSD at College Community Services, a contractor for Kern Mental Health, where she is in an art expression group that meets once per week. She also completed a 10 week course and will take another when it begins. She takes medication and sees a psychiatrist every three months. AR 470-471. She is taking Zoloft for depression and Trazodone to help her sleep. AR 471. She explained that gaps in her mental health treatment were caused by delays in getting services. AR 473.

Plaintiff also receives Interferon treatment for hepatitis C. AR 475. She has difficulty getting treatment for her hepatitis C and fibromyalgia, however, because she is not insured. AR 476.

During the day, she watches television, does puzzles and word searches and does crafts from donated items. AR 477. She also enjoys her art expression group at College Community Services.

When questioned by the ALJ, Plaintiff explained that she sometimes drives to her therapy because it is close. She sometimes does her own grocery shopping. AR 480.

For the first hypothetical question, the ALJ asked the VE to assume a person of Plaintiff's age, education and past work. This person retains the residual functional capacity ("RFC") to lift and carry 20 pounds occasionally and 10 pounds frequently. This person can sit, stand and walk six hours each, and can occasionally climb ropes, ladders and scaffolds. The VE testified that this person could perform Plaintiff's past work as a retail manager, dependency counselor and service driver. AR 484.

For the second hypothetical, the ALJ asked the VE to assume that this person had the same RFC as in the first hypothetical, but also had difficulty relating to and interacting with the general public and occasionally with others. This person would have problems adapting to changes in the work setting two-thirds of the time. The VE testified that this person could not perform Plaintiff's past work or any other work in the national economy. AR 485.

Plaintiff's representative asked the VE to assume the first hypothetical, but to change the standing ability to two hours. The VE testified that this person could perform the dependency

counselor position. AR 485-486. If this person also could not maintain attention for two hour segments, she would not be able to perform Plaintiff's past work or any other work. AR 486.

If this person was limited to two hours standing and was limited to simple, repetitive tasks, she could not perform Plaintiff's past work or any other work. AR 487.

Citing the Mental Residual Functional Capacity Assessment, Plaintiff's representative asked the VE to assume that this person had a moderate inability to understand, remember and carry out detailed instructions, a moderate inability to interact appropriately with the general public, a moderate inability maintaining social functioning, and a moderate difficulty maintaining concentration, persistence and pace. This person would not be able to perform Plaintiff's past work or any other work. AR 488-489.

Medical Record

Plaintiff received treatment through the Riverside County Department of Mental Health from approximately May 2002 through November 2003. AR 137-151. During this time, she was prescribed numerous medications, including Paxil and Zoloft. AR 137-138.

On April 4, 2004, Plaintiff underwent a liver biopsy to evaluate her chronic hepatitis C. The biopsy revealed chronic hepatitis C, grade 2 inflammation and grade 2 fibrosis. AR 157.

On May 22, 2004, Plaintiff underwent an internal medicine evaluation performed by J. O'Brien, M.D. Plaintiff's chief complaints included hepatitis C, hiatal hernia with gastroesophageal reflux disease, weight loss and low back pain. Plaintiff reported that her hepatitis C causes fatigue, as well as constant, achy joint pain and sometimes burning pain in her neck. She described her pain as the "worst possible pain a human being can experience." AR 186. On examination, Plaintiff was not in any distress and had no difficulty walking down the hall, sitting in a chair during the history, getting onto the examination table, or taking her socks off. Strength and reflexes were normal. Range of motion testing was generally within normal limits, except for cervical rotation, shoulder flexion and abduction, hip flexion and knee flexion. Sensation was intact to light touch over all four extremities. Waddell's signs were positive. AR 191.

Dr. O'Brien assessed hepatitis C and low back pain without evidence of radiculopathy. Based on his objective findings, he opined that Plaintiff should be able to stand and walk for six hours in an eight hour day, and sit for six hours in an eight hour day. She should be able to lift and carry 50 pounds frequently and 100 pounds occasionally. AR 191. Plaintiff could stoop, crouch, kneel and climb for six hours in an eight hour workday. AR 192.

Plaintiff was evaluated by psychologist Wendy McCray, Ph.D., on June 16, 2004. Plaintiff reported that she was disabled due to "constant pain in joints and pressure points, psychologically stressed, rather be left alone." She last received mental health treatment "a few years ago" but has been receiving monthly therapy. Plaintiff reported that she is able to complete self-care activities, but her daughter does the laundry because she has no energy to complete the task. Her daughter also does the grocery shopping and household chores. On mental status examination, Plaintiff was oriented to person, place and time, and displayed adequate attention and concentration for conversation. Her memory for remote information was grossly intact and she could complete simple, oral mathematical calculations. Plaintiff reported that her mood was poor, but her affect was full in range and appropriate to the setting. Her thought process was logical and linear, with no impairment noted. AR 193-195.

Dr. McCray diagnosed depressive disorder, not otherwise specified, and polysubstance abuse, 14 years in remission. She explained that Plaintiff's ability to relate to others, including coworkers, supervisors and the general public, in an appropriate manner is essentially unimpaired if her presentation during the evaluation was representative of her typical functioning. Her ability to maintain attention and concentration for simple one and two step tasks was also unimpaired. Based on the mental status examination, her ability to perform multi-step and higher level cognitive tasks appears grossly unimpaired from a cognitive point of view. Based on her current performance, Plaintiff could withstand the pressures associated with the interview and mental status testing. AR 193-196.

Records from Merle R. Sogge, M.D., dated June 2004, indicate that Plaintiff reported symptoms of fatigue and difficulty sleeping. She had been treated for hepatitis C, with improvement, and was treated for depression/anxiety, which was considered stable with

5

medication. Plaintiff's gastroesophageal reflux was controlled with medication and her chronic back pain was stable. AR 201-202.

On June 10, 2004, State Agency physician Sudhir Jaituni, M.D., completed a Physical Residual Functional Capacity Assessment. Dr. Jaituni opined that Plaintiff could occasionally lift and/or carry 20 pounds, 10 pounds frequently, could stand and/or walk for about six hours in and eight hour day, and could sit for about six hours in an eight hour day. She could frequently climb ramps and stairs, but could never climb ladders, ropes or scaffolds. This opinion was affirmed on November 1, 2004. AR 223-230.

On July 24, 2004, State Agency physician E. Harrison, M.D., completed a Psychiatric Review Technique form. In rating Plaintiff's functional limitations, Dr. Harrison opined that she had mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence and pace. AR 231-234. In a Mental Residual Functional Capacity Assessment, Dr. Harrison opined that Plaintiff was not significantly limited in her ability to remember locations and work-like procedures or in her ability to understand, remember and carry out very short and simple instructions. She was moderately limited in her ability to understand, remember and carry out detailed instructions. She was also moderately limited in her ability to interact appropriately with the general public. AR 235-237. Dr. Harrison concluded that Plaintiff could carry out simple, routine work with limited public contact. This opinion was affirmed on November 1, 2004. AR 237.

Plaintiff was hospitalized in January 2005 with chest pain and shortness of breath. AR 265-266. She was diagnosed with right lower lobe pneumonia and tachycardia from dehydration. AR 266. Abdominal x-rays taken on January 8, 2005, revealed COPD with prominent pneumonia in the right mid and upper lung laterally and slight liver enlargement. AR 276.

Plaintiff was seen again in August 2005 after experiencing chest pain and fainting while working in the sun. AR 246-250. Chest x-rays were taken on August 11, 2005, and revealed COPD with minor scarring on the right, due to previous pneumonia. AR 253. A CT scan of her head was normal. AR 254.

In September 2005, Plaintiff was seen at the College Health Clinic for depression and PTSD. She reported poor sleep, anxiety, social withdrawal and mood changes. She was disheveled, sad and tearful with deficiencies in memory. Her affect was flat, but she was alert. Insight and judgment were fair. She was diagnosed with recurrent major depression and PTSD and prescribed Zoloft. AR 372-374.

In a psychiatric progress note dated January 3, 2006, Plaintiff reported that she was doing much better, but was still having difficulty with fibromyalgia and hepatitis C. Insight, memory and judgment were good. Attention and concentration was intact. AR 375.

On February 7, 2006, Plaintiff was reassessed at Kern County Mental Health. Plaintiff reported that Zoloft helped but that the continuous stress never ends. She was not close to reaching her goal of feeling more normal. Her symptoms included recurring nightmares, emotional problems from past trauma, ongoing stress from family relationships, trust issues and difficulty getting close to people. Plaintiff reported that she lacks motivation, and some days, just performing activities of daily living is difficult. On mental status examination, she continued to have PTSD symptoms and depression, but felt that Zoloft was somewhat helpful. She has average intellectual functioning and reported short-term and long-term memory difficulties. She was diagnosed with recurrent major depression and PTSD. AR 365-370.

On March 7, 2006, a nurse practitioner completed a Mental Impairment Questionnaire.[3] According to the questionnaire, Plaintiff was seriously limited in her abilities to remember work-like procedures, understand, remember and carry out very short and simple instructions, work in coordination with or proximity to others, make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically based symptoms, get along with co-workers, respond appropriately to changes in a routine work setting, and deal with normal stress. She had a limited, but satisfactory ability to interact appropriately with the general public. She was seriously limited in her abilities to understand, remember and carry out detailed

---

[3] The questionnaire submitted to the ALJ was signed by a nurse practitioner. After the hearing, the questionnaire was resubmitted to the Appeals Council, without material change, with a co-signature and stamp of physician Frederic Rowe, M.D. AR 407-413.

instructions, set realistic goals and deal with the stress of skilled or semi-skilled work. She was seriously limited in her abilities to maintain socially appropriate behavior, travel in unfamiliar places and use public transportation. She was unable to meet competitive standards in performing at a consistent pace, accepting instructions and responding appropriately to criticism. She had no useful ability to maintain attention for two hour segments. AR 386-389. Overall, she had extreme restrictions in activities of daily living and extreme difficulties in maintaining social functioning. She had marked difficulties in maintaining concentration, persistence or pace. AR 390. Plaintiff would likely be absent more than four days per month. She was not a malingerer. AR 391.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of a history of drug abuse, in remission, hepatitis C with related symptoms of fatigue and degenerative changes. He found her depression and PTSD to be non-severe. Despite her impairments, the ALJ determined that Plaintiff retained the RFC to lift and carry 20 pounds occasionally, 10 pounds frequently, and stand, walk or sit for six hours each in an eight hour day. Plaintiff was limited to occasional rope, ladder and scaffold climbing. Based on this RFC, the ALJ determined that Plaintiff could return to her past work as a retail manager, a counselor and a service driver. AR 16-17, 20.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must

apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process.  20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[4]  Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an impairment or a combination of impairments that is considered "severe" (history of drug abuse, in remission, hepatitis C with related symptoms of fatigue and degenerative changes) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; and (4) retains the RFC to perform her past relevant work as a retail manager, counselor and service driver.  AR 16-20.

---

[4] All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

9

Here, Plaintiff argues that the ALJ (1) erred in failing to adopt Dr. Rowe's March 2006, assessment; and (2) erred in failing to properly assess her testimony.

## DISCUSSION

A.  Dr. Rowe's Opinion

Plaintiff first argues that the ALJ erred in failing to adopt Dr. Rowe's March 7, 2006, assessment.[5]

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995). Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983)). This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988).

In *Orn v. Astrue,* 495 F.3d 625 (9th Cir. 2007), the Ninth Circuit reiterated and expounded upon its position regarding the ALJ's acceptance of the opinion an examining physician over that of a treating physician. "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not '"substantial evidence."' *Orn,* 495 F.3d at 632; *Murray*, 722 F.2d at 501-502.

---

[5] Portions of Plaintiff's argument suggest that the ALJ erred by finding her mental impairment non-severe. However, in discussing her resulting limitations, the classification of impairments is not relevant. The RFC finding takes into account limitations and restrictions imposed by all of an individual's impairments, even those that are not severe. SSR 96-8p.

"By contrast, when an examining physician provides 'independent clinical findings that differ from the findings of the treating physician' such findings are 'substantial evidence.'" *Orn, 496 F.3d at 632*; *Miller v. Heckler, 770 F.2d 845, 849 (9th Cir.1985)*. Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, *see Allen v. Heckler, 749 F.2d 577, 579 (9th Cir.1985)*, or (2) findings based on objective medical tests that the treating physician has not herself considered, *see Andrews, 53 F.3d at 1041*.

If a treating physician's opinion is not giving controlling weight because it is not well supported or because it is inconsistent with other substantial evidence in the record, the ALJ is instructed by Section 404.1527(d)(2) to consider the factors listed in Section 404.1527(d)(2)-(6) in determining what weight to accord the opinion of the treating physician. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. 20 C.F.R. 404.1527(d)(2)(i)-(ii). Other factors include the supportablility of the opinion, consistency with the record as a whole, the specialization of the physician, and the extent to which the physician is familiar with disability programs and evidentiary requirements. 20 C.F.R. § 404.1527(d)(3)-(6). Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is "still entitled to deference." SSR 96-2p; *Orn, 495 F.3d at 632-633*. "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p; *Orn, 495 F.3d at 633*.

Here, the ALJ assigned "no weight" to the March 7, 2006, assessment, explaining first that the treatment records "do not hint, much less support the severe limitations assigned" therein. AR 19. Indeed, the March 7, 2006, assessment set forth extreme mental limitations that would likely preclude all work. Although Plaintiff suffers from a mental impairment, as the ALJ found, the treatment records do not support such harsh restrictions. For example, both the examining physician and reviewing State Agency physician opined that Plaintiff was capable of simple, repetitive tasks despite her mental impairment. AR 193, 235.

Dr. McCray conducted a mental status examination of Plaintiff and found that although Plaintiff had a depressive disorder, she could appropriately relate to others, including coworkers, supervisors and the general public, and maintain attention and concentration for simple one and two step tasks. AR 193-196. When an examining physician provides "independent clinical findings that differ from the findings of the treating physician such findings are substantial evidence." *Orn*, 496 F.3d at 632; *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir.1985). The ALJ was therefore entitled to adopt Dr. McCray's opinions over Dr. Rowe's extreme limitations.

Plaintiff points to numerous diagnoses and symptoms in support of her argument, but these do not necessarily translate into such extreme limitations. The mere diagnosis of an impairment is not sufficient to sustain a finding of disability. *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

Insofar as Plaintiff faults the ALJ for stating that the March 2006, report was not signed by an acceptable medical source, the ALJ did not misstate the evidence. Plaintiff concedes that while she ultimately submitted a copy of the report signed by Dr. Rowe to the Appeals Council, the copy submitted to the ALJ was signed only by a nurse practitioner. AR 392. A nurse practitioner is not an acceptable medical source. 20 C.F.R. § 404.1513(d). While there are exceptions to this rule, based on the report submitted to the ALJ, they are not applicable here. *Polny v. Bowen*, 864 F.2d 661, 662-664 (9th Cir. 1988); *Gomez v. Chater*, 74 F.3d 967 (9th Cir. 1996). Moreover, although the report was ultimately signed by Dr. Rowe and submitted to the Appeals Council, it does not change the result because the ALJ relied primarily on the fact that the opinion was not supported by the medical evidence. *See Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989) (rejecting a treating physician's opinion because it was inconsistent with contemporaneous medical notes, and because the claimant obtained the opinion after an adverse ALJ decision).

The Court does not have the responsibility for weighing the evidence and resolving conflicts therein, that responsibility belongs to the Commissioner alone. *Richardson v. Perales*, 402 U.S. 389, 399 (1971). In any event, the Court must uphold the ALJ's decision where, as

1 here, the evidence is susceptible to more than one rational interpretation.  *Magallanes v. Bowen,*
2 *881 F.2d 747, 750 (9th Cir. 1989)*.

3 B.     Plaintiff's Testimony

4     Next, Plaintiff argues that the ALJ failed to properly assess her testimony in which she
5 stated that she could not work because of difficulty following instructions and getting along with
6 others, as well as pain.

7     The ALJ is required to make specific findings assessing the credibility of plaintiff's
8 subjective complaints.  *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991).  "An ALJ is
9 not 'required to believe every allegation of disabling pain' or other non-exertional impairment,"
10 *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (citation omitted).  In rejecting the
11 complainant's testimony, "the ALJ must identify what testimony is not credible and what
12 evidence undermines the claimant's complaints."  *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir.
13 1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir.
14 1988)).  Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the
15 severity of her pain and impairments is unreliable, the ALJ must make a credibility determination
16 with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily
17 discredit claimant's testimony.  *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

18     "The ALJ may consider at least the following factors when weighing the claimant's
19 credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's]
20 testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work
21 record, and testimony from physicians and third parties concerning the nature, severity, and effect
22 of the symptoms of which [claimant] complains."  *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d
23 789, 792 (9th Cir. 1997).  "If the ALJ's credibility finding is supported by substantial evidence in
24 the record, we may not engage in second-guessing."  *Id.*

25     In discussing Plaintiff's testimony, the ALJ found that her medically determinable
26 impairments could reasonably be expected to produce the alleged symptoms, but that her
27 statements concerning the intensity, duration and limiting effects are not entirely credible.  AR
28 17.  He then reviewed the medical evidence and pointed to specific instances that negated her

13

statements. For example, during her examination by Dr. O'Brien, she exhibited positive Waddell signs, which are used to detect exaggeration.[6] AR 18. Plaintiff also told Dr. O'Brien that it was difficult for her to stand and that she had difficulty getting in and out of a car or bathtub, but during the examination, she "was in no distress whatsoever, and had no difficulty walking, getting on or off of the examining table or removing her socks."[7] AR 18, 187, 191. The ALJ may use "ordinary techniques" in addressing credibility. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), and may make inferences "logically flowing from the evidence." *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996).

The ALJ also explained that Dr. McCray found no psychiatric limitations and that Dr. O'Brien and the State Agency Physician found that Plaintiff could perform at least light level work. AR 18. While the ALJ may not rely solely on a lack of objective medical evidence in rejecting a claimant's testimony, it is one factor that he may consider.

After discussing the medical evidence and setting out the inconsistencies contained therein, the ALJ set forth certain aspects of her daily activities that he found to be inconsistent. He first noted that despite her allegations of limitations relating to PTSD, she recently completed a ten week treatment course and was enrolled in another short-term group treatment course. The ALJ explained that this suggests that her symptoms are not as limiting as she testified. Plaintiff suggests that her involvement in the treatment courses suggests otherwise, i.e., that she is receiving treatment for PTSD and must therefore have resulting limitations. However, the ALJ seems to be suggesting that Plaintiff's ability to participate in, and successfully complete, a *group* therapy course calls into question her allegation that she is unable to be around people.

In discussing her COPD, the ALJ explained that Plaintiff continues to smoke and that she is not taking any medications for the condition, suggesting that it may not be as limiting as she

---

[6] Plaintiff directs the Court to a www.wikipedia.org reference that explains the relationship of Waddell's signs to depression. However, it is not the role of this Court to look beyond the evidence presented to the ALJ and/or engage in such an analysis.

[7] Plaintiff also described her joint pain to Dr. O'Brien as the "worst possible pain a human being can experience." AR 185-186.

alleged. AR 19. Again, the ALJ may make inferences "logically flowing from the evidence." *Macri,* 93 F.3d at 544.

Finally, the ALJ explained that despite her allegations of severe pain, Plaintiff was only taking Tylenol. AR 19. *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005) (ALJ is permitted to consider lack of medical treatment in assessing credibility).

Based on the above, the ALJ set forth sufficiently specific reasons to permit the Court to conclude that the ALJ did not arbitrarily discredit Plaintiff's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002). Plaintiff's claim is without merit and must be denied.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Kimberly Angst.

IT IS SO ORDERED.

Dated:   **February 25, 2008**           **/s/ Dennis L. Beck**
                                         UNITED STATES MAGISTRATE JUDGE